**UNITED STATES OF AMERICA,**

                **Plaintiff,**

      **v.**

**EDWARD J. MEEHAN ET AL.,**

                **Defendants.**

:

:

**CIVIL ACTION**

**NO.  10-713**

### MEMORANDUM

**Tucker, J.**                                                        **August __, 2011**

Presently before the Court are Defendants Edward and Colleen Meehan's Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (Doc. 8) and Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment and Cross Motion for Summary Judgment (Doc. 11), and Defendants' Response thereto.  Upon consideration of the parties' motions with exhibits and declarations, this Court will deny Defendants' Motion for Summary Judgment and grant Plaintiff's Cross Motion for Summary Judgment.

## I.  BACKGROUND

This suit, filed pursuant to 26 U.S.C. § 6301, was filed February 19, 2010 by the United States ("Plaintiff") to reduce to judgment certain federal tax assessments against Edward and Colleen Meehan ("Defendants").

Defendants reported adjusted gross income of $41,679 and a taxable income of $16,590 on their federal tax returns for 1996. (Pl.'s Resp. and Cross-Mot. for Summ. J., Ex. 2.)

1

Defendants reported adjusted gross income of $33,792 and a taxable income of $7,772 on their federal tax returns for 1998. (Pl.'s Resp. and Cross-Mot. for Summ. J., Ex. 3.)  For 1999, the Meehans reported adjusted gross income of $46,948 and a taxable income of $21,067 on their federal tax returns. (Pl.'s Resp. and Cross-Mot. for Summ. J., Ex. 4.)  For 2000, the Defendants reported adjusted gross income of $34,933 and a taxable income of $10,302 on their federal tax returns. (Pl.'s Resp. and Cross-Mot. for Summ. J., Ex. 5.)  Finally, for 2001, the Defendants reported adjusted gross income $34,821 and a taxable income of $9,593. (Pl.'s Resp. and Cross-Mot. Summ. J., Ex. 6.)  In all, the IRS assessed taxes against the Defendants of $9,127, $5,442, $6,190, $3,608, and $3,526 for the years 1996, 1998, 1999, 2000, and 2001, respectively. (Pl.'s Resp. and Cross-Mot. for Summ. J., Ex. 2-6.)  The total amount of taxes assessed for these periods was $27,893.  Defendants, however, failed to pay these taxes on time and were subsequently assessed interest and penalty additions on account of their delinquency.

Defendants live in greater metropolitan Philadelphia and are a family of six, consisting of Edward and Colleen Meehan, their two children and two grandchildren. (Notes from IRS Agent Boylan, Defs.' Ex. 18.)[1]  Mr. Meehan, 61, was unemployed at the time of the filing of this suit and does not collect unemployment compensation. He most recently held employment working on state election campaigns. (Defs.' Letter to IRS Agent Stumpo, Defs.' Ex. 22.) Mrs. Meehan, 60, was not employed before she sought employment in 2000, due to a lack of funds within the family to pay for living expenses. (Meehan Dep. 107:14-25, Dec. 1, 2010.)  At the time of the filing of suit, Mrs. Meehan was employed as a clerk for Jefferson Health Care. (Defs.' letter to IRS Agent Stumpo, Defs.' Ex. 22.) As of January 21, 2009, the Defendants' only source of

---

[1] Defendants provided the Court with several supplementary exhibits unattached to any particular motion.

income was Mrs. Meehan's gross salary of $2,600 per month. (Notes from IRS Agent Boylan, Defs.' Ex. 18.)

In June of 2003, Mr. Meehan began treatment for IgM Nephropathy, which caused chronic kidney disease stage III.  He was also diagnosed with well-controlled hypertension and minimal proteinuria. (Letter from Dr.'s Smith and Techev, Defs.' Ex. 17.)  Mr. Meehan maintained employment throughout his illness, however, in 2008, Mr. Meehan stopped working. (Notes from IRS Agent Boylan, Defs.' Ex. 18.)  As of 2009, the Defendants independently acquired health insurance, as Mrs. Meehan's employer did not provide health benefits. (Notes from IRS Agent Boylan, Defs.' Ex. 18.)

Over subsequent years, the Defendants accumulated a variety of expenses apart from their day-to-day living expenses, including medical bills and auto payments. (Meehan Dep. 108:19-25, Dec. 1, 2010; Notes from IRS Agent Boylan, Defs.' Ex. 18.)  The Defendants had purchased three automobiles from 1994 to 2009. (Meehan Dep. 108:19–109:9, Dec. 1, 2010.)

In 2004, Mr. Meehan's mother passed away and left the Defendants with an inheritance of $50,000.  The Defendants did not put this inheritance toward paying off the ever-accumulating taxes, interest, and penalties that had been assessed against them. (Meehan Dep. 109:10-25, December 1, 2010.)

Mr. Meehan over the course of six years filed three offers-in-compromise in an effort to reduce his tax payments and avoid penalties. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 2-4.)  An offer-in-compromise is an agreement between a taxpayer and the IRS that settles the taxpayer's tax liabilities for less than the full amount owed.  Each of these offers-in-compromise was rejected by the IRS, leaving the Defendants with the obligation to pay their taxes as initially

assessed, and in their entirety. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 2-4.)  The Defendants did not meet this obligation.

On February 19, 2010, the United States filed suit against the Defendants to reduce several tax assessments to judgment.  Among the Tax Years listed by the United States in its suit were: 1996, 1998, 1999, 2000, and 2001.  The date of assessment listed by the Internal Revenue Service ("IRS") for 1996 and 1998 was June 7, 1999. (Compl. ¶ 1, 8.)

The IRS has presented certificates of assessment, which show that the IRS has assessed taxes against the Meehans for 1996, 1998, 1999, 2000, and 2001. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 6.)  These certificates demonstrate that the Defendants are indebted to the United States for unpaid federal income taxes and statutory penalty additions.  For the years 1996, 1998, 1999, 2000, and 2001, the amounts of these unpaid taxes and additions are as follows (calculated as of December 6, 2010): $26,090.42, $13,679.64, $13,027.75, $5,674.62, and $4,224.33, respectively, for a total of $62,696.76. (Pl.'s Resp. and  Cross-Mot. for Summ. J. at 7.)  Plaintiff further seeks any penalties, additions, and interest that have accrued since December 6, 2010, the date of calculation.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law." Fed R. Civ P. 56(c). See Levy v. Sterling Holding Co., LLC, 544 F.3d 493, 501 (3d Cir. 2008). A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); Dee v. Borough of Dunmore, 549 F.3d 225, 229 (3d Cir. 2008).  A

factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. See Anderson, 477 U.S. at 248; Fakete v. Aetna, Inc., 308 F.3d 335, 337 (3d Cir. 2002).

The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). Under Fed. R. Civ. P. 56(e), the opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. See Martin v. Godwin, 499 F.3d 290, 295 (3d Cir. 2007).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249; Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. See Horsehead Indus., Inc. v. Paramount Communications, Inc., 258 F.3d 132 (3d Cir. 2001). The court must award summary judgment on all claims unless the non-moving party shows through affidavits or admissible evidence that an issue of material fact remains. See, e.g., Love v. Rancocas Hosp., 270 F.Supp.2d 576, 579 (D.N.J. 2003); Koch Materials Co. v. Shore Slurry Seal, Inc., 205 F.Supp.2d 324, 330 (D.N.J. 2002).

## III.  DISCUSSION

1.  **Defendants' Motion for Summary Judgment – Statute of Limitations**

Defendants seek summary judgment, pursuant to Federal Rule of Civil Procedure 56. Defendants aver that the United States failed to file suit within ten (10) years from June 7, 1999, the date of Defendants' 1996 and 1998 tax assessment, as required under I.R.S. Rule 5.17.4.4 (08-01-2010), and thus did not timely commence a suit for the collection of taxes assessed within the period of limitations.  The Court disagrees, as discussed below, and denies Defendants' Summary Judgment Motion.

Plaintiff, in its Cross Motion for Summary Judgment, avers that it has presented official records of the IRS showing presumptively correct assessments of taxes and penalties that Defendants have failed to pay.  Plaintiff seeks to reduce several federal tax assessments to judgment. For the reasons discussed below, the Court agrees and grants Plaintiff's Cross Motion for Summary Judgment.

Defendants cite IRS Rule 5.17.4.4 (08-01-2010), which states: "The failure to timely assess or to commence a suit for the collection of taxes assessed within the period of limitations can defeat a judicial action."  Defendants aver that the IRS relied on extensions to the statute of limitations during the pendency of offers-in-compromise, the earliest of which was dated December 7, 1999.  Defendants interpret the Restructuring and Reform Act of 1998 ("1998 Reform Act") to provide that any extension of the statute of limitations for collections entered into before December 31, 1999 expires at the later of December 31, 2002 or the original end date

6

for the statute of limitations.  As such, Defendants aver that Plaintiff's suit, filed past the original

date of the statute of limitations for collections and after December 31, 2002, is not timely.

Defendants seek summary judgment to eliminate balances from 1996 and 1998 from the

Plaintiff's suit and to redirect any credits applied to those two years to any balances which may

remain.

Plaintiff asserts that the Court should deny summary judgment for Defendants for three

reasons: (1) the United States timely commenced this lawsuit to collect the outstanding tax debts;

(2) Defendants forfeited the Statute of Limitations defense when they failed to plead it as an

affirmative defense under Federal Rule of Civil Procedure 8; and (3) Defendants improperly filed

this motion for summary judgment in violation of this Court's motion practice.

In addressing the timeliness of suit, Plaintiff cites 26 U.S.C. § 6502(a), which states that

the United States must sue to collect a tax liability within ten years of the date of the tax

assessment.  Plaintiff asserts, however, citing I.R.C. § 6331(k) and the 1998 Reform Act, that the

statute of limitations is tolled while an offer-in-compromise is pending, and for thirty days after

the IRS rejects such an offer. 26 U.S.C. § 6331(k)(3); United States v. Ryals, 480 F.3d 1101,

1106 (11th Cir. 2007).  Accordingly, Plaintiff avers that Defendants' three offers-in-compromise

tolled the statute of limitations for 288 days, extending its expiration date from June 7, 2009 to

March 22, 2010, thus making the suit timely.

For the reasons discussed below, the Court agrees with Plaintiff's assertion stating that

the lawsuit is timely, and thus denies Defendants' Summary Judgment Motion.

7

Pursuant to I.R.C. § 6502, the United States may collect a tax, by a levy or court proceeding, within ten years after the assessment. I.R.C. § 6502(a)(1), codified at 26 U.S.C. § 6502.  Certain circumstances, however, may result in the tolling or suspension of the limitations period, including the submission and consideration of offers-in-compromise.  Prior to the enactment of the Internal Revenue Service Restructuring and Reform Act of 1998 ("1998 Reform Act"), which became effective in 2000, I.R.C. § 6502 allowed for an extension of the statute of limitations if agreed upon by the IRS and the taxpayer. See Staso v. U.S., 538 F. Supp. 2d 1335, 1344 (D. Kan. 2008).  The terms of this agreement would be included within IRS Form 656, which accompanies the taxpayers offer-in-compromise and provides for a waiver of the statute of limitations.  The pertinent language contained within Form 656 is the following: "The collection statute of limitations is suspended for all tax periods on your offer during the period your offer is pending.  Your offer is considered pending while we investigate and evaluate your offer, for 30 days after we reject an offer, and while you appeal an offer rejection."

In 1998, Congress passed the Internal Revenue Service Restructuring and Reform Act of 1998 ("the 1998 Reform Act"), which took effect on January 1, 2000.  Pub. L. No. 105-206, 112 Stat. 685.  The 1998 Reform Act contains two relevant provisions: § 3461 and § 3462.  Section 3461 of the 1998 Reform Act, entitled "Procedures Relating to Extension of Statute of Limitations by Agreement," amended I.R.C. § 6502 by disallowing taxpayers and the IRS from entering into agreements to extend the collection statute of limitations through a taxpayer's submission of an offer-in-compromise.  Section 3461(c)(1) applied the amendments of § 3461 to any requests for extension made after December 31, 1999.

Section 3461(c)(2) of the 1998 Reform Act applied the provisions of § 3461 to any *prior* requests, specifically requests made on or before December 31, 1999 to extend the statute of limitations. Staso v. U.S., 538 F.Supp.2d 1335 at 1345. Section 3461(c)(2) provided that where a taxpayer agreed to extend such period beyond the ten-year period contained within I.R.C § 6502(a), the extension would expire on the latest of: (1) the last day of the ten-year period; (2) December 31, 2002; or (3) the 90th day after the end of the period of an extension in the case of an extension in connection with an installment agreement. See U.S. v. Ryals, 480 F.3d 1101, 1105 (11th Cir. 2007) (citing Pub. L. No. 105-206, 112 Stat. 685, 764)).

Section 3462, or "Suspension Provision," of the 1998 Reform Act is entitled "Offers-in-Compromise." Section 3462(b) added I.R.C. § 6331 to the I.R.C. Code. Pursuant to I.R.C. § 6331(i)(5), the statute of limitations was suspended while an offer-in-compromise was pending, for an additional thirty days after the IRS rejected an offer-in-compromise and during the pendency of any appeal filed after the rejection. Pub. L. No. 105-206, § 3462, 112 Stat. 685, 764-766.  During this suspension period, the IRS, pursuant to I.R.C. § 6331(k), was prohibited from levying on the assessment.  Section 3462(e) indicates that the amendments made by § 3462 generally apply to proposed offers-in-compromise and installment agreements submitted after January 1, 2000, the date of the enactment of the Act.  Additionally, the amendments made by § 3462(b) applied to all offers-in-compromise pending on or made after December 31, 1999. Pub. L. No. 105-206, § 3462(e), 112 Stat. 685, 766.

The key difference between § 3461 and § 3462 of the 1998 Reform Act is that § 3461 applies to agreements between the taxpayer and the IRS to extend the collections statute of

9

limitations, while § 3462 applies only to statutory extensions to the limitations period, such as I.R.C. § 6331(k) and § 6331(i)(5).  As such, § 3462, the Suspension Provision, acts to statutorily suspend the limitations period while the offer-in-compromise is pending.

The Suspension Provision of the 1998 Reform Act was eliminated in 2000 when Congress passed the Community Renewal Tax Relief Act of 2000 ("2000 Renewal Act"). Effective December 21, 2000, the 2000 Renewal Act removed the Suspension Provision so that the limitation period was no longer statutorily suspended while an offer-in-compromise was pending, for the additional thirty days after the IRS rejected an offer-in-compromise, and during the pendency of any appeal filed after the rejection.

In 2002, however, Congress enacted the Job Creation and Worker Assistance Act of 2002 ("2002 Jobs Act"), which reinstated the Suspension Provision, again calling for the suspension of the limitation period during the pendency of an offer-in-compromise, the thirty days after rejection, and during the pendency of any appeal filed after rejection. This is the latest and current state of § 3462 as it relates to statutory suspension.

On February 19, 2010, the United States filed suit against Edward and Colleen Meehan to reduce several tax liens to judgment.  The IRS assessed Defendants' 1996 and 1998 tax liabilities on June 7, 1999, on which date the statute of limitations began to run. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 2.)  As a result, under I.R.C. § 6502, the United States had until June 7, 2009, ten years after assessment, to collect this tax by a levy or court proceeding.  However, based on the Suspension Provision, Defendants' submission of three offers-in-compromise extended the limitation period to March 22, 2010.

On December 7, 1999 Defendants submitted their first offer-in-compromise, which the IRS rejected on April 12, 2000. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 2.)  An offer-in-compromise is considered "pending," according to Form 656, at the time the taxpayer signs the offer. See Staso v. U.S., 538 F.Supp.2d 1335 at 1351.  Because the offer-in-compromise was pending prior to December 1, 2001, § 3461 of the 1998 Reform Act applied to cut off the limitations period extension, per the *agreement* within the terms of the offer-in-compromise, at the end of the original ten year period.  The Suspension Provision, contained within § 3462 of the 1998 Reform Act applied as well, statutorily suspending the collection period during the pendency of the offer-in-compromise.  Because Defendants' offer-in-compromise was pending on December 31, 1999, and, pursuant to § 3462(e)(2), the Suspension Provision applies "to offers-in-compromise pending on or made after December 31, 1999," the Suspension Provision suspended the limitations period beginning the effective date of the 1998 Reform Act, January 1, 2000. Id. at 1351 (citing Pub. L. No. 105-206, § 3462(b), 112 Stat. 685, 766).

Defendants' first offer-in-compromise was subsequently rejected on April 12, 2000.  The pendency period continued through thirty days after the rejection of the offer-in-compromise, therefore suspending the statute of limitations, under the Suspension Provision, until May 12, 2000.  The 2000 Renewal Act, which effectively eliminated the Suspension Provision of the 1998 Reform Act, need not be considered because this period ended before the 2000 Renewal Act became effective, on December 21, 2000.  Defendants' first offer-in-compromise thus had the effect of tolling the statute of limitations for 132 days, from January 1 to May 12, 2000.

Defendants' second offer-in-compromise was submitted on June 5, 2002 and rejected on July 24, 2002.[2] (Pl.'s Resp. and Cross-Mot. for Summ. J. 3.)  At the time that the second offer began pending, the 2002 Jobs Act had reinstated the Suspension Provision within the 1998 Reform Act, calling for the suspension of the limitation period during the pendency of an offer-in-compromise, the thirty days after rejection, and during the pendency of any appeal filed after rejection.  Therefore, Defendants' second offer-in-compromise tolled the statute of limitations from June 5 until September 22, 2002, a period of 109 days.

Defendants submitted a third offer-in-compromise on December 20, 2005, which the IRS rejected on January 6, 2006. (Pl.'s Resp. and Cross-Mot. for Summ. J. at 4.)  Pursuant to the Suspension Provision, which remained unaltered since reinstatement, the third and final offer-in-compromise tolled the statute of limitations from December 20, 2005 to February 6, 2006 for a total of forty-seven days.

In total, Defendants' three offers-in-compromise tolled the statute of limitations for 288 days.  The statute of limitations for collection was thus extended from June 7, 2009 until March 22, 2010. The lawsuit filed by Plaintiff on February 19, 2010, is thus timely.

The Court recognizes that Plaintiff asserts two alternative arguments against Defendants' motion for summary judgment.  The Court, however, finds that Defendants' motion is adequately defeated by Plaintiff's argument regarding the timeliness of suit. The Court will briefly address

---

[2] Plaintiff, in its Response and Cross Motion for Summary Judgment, originally asserted that Defendants' second offer-in-compromise was rejected thirty days before August 23, 2002.  Although of no consequence, Plaintiff thereafter filed a Notice of Error indicating that Defendants' second offer-in-compromise was rejected on August 23, 2002, thus tolling the statute of limitations until September 22, 2002.

Plaintiff's alternative responses below.

Apart from its argument regarding the timeliness of suit, Plaintiff makes two additional assertions regarding Defendants' motion for summary judgment: (1) that Defendants forfeited the statute of limitations defense because they did not plead it in their answer, and (2) that Defendants' motion was filed in violation of the Court's pretrial motion procedures.  Both assertions, while discrete, are similarly founded in the Defendants' procedural error. Because Edward Meehan is representing Defendants in a pro se capacity, the Court provides leniency in applying its procedural rules and regulations.  As such, the Court does not deny Defendants' motion based on the above assertions of procedural error.

2.      **Plaintiff's Cross Motion for Summary Judgment – Accuracy of Assessments and Penalties**

In its cross motion for summary judgment, Plaintiff contends that the United States has presented official records of the IRS showing that the IRS assessed the taxes at issue in this case. Once these certificates of assessment are presented, Plaintiff asserts that the burden rests upon Defendants to show that they do not owe the tax.  Plaintiff avers that Defendants have not met this burden.  Because there is no material factual issue in dispute in this case, Plaintiff contends that the Court should grant summary judgment in Plaintiff's favor.

Plaintiff asserts that it has provided certificates of assessment showing that the IRS assessed taxes against the Meehans for 1996, 1998, 1999, 2000, and 2001.  Consequently, citing United States v. Byock, 130 F. App'x 594, 595 (3d Cir. 2005), Plaintiff contends that when the

United States introduces certificates of assessment in support of a motion for summary judgment, the taxpayer can avoid summary judgment only by presenting evidence that the assessments are incorrect. Because the tax assessments are based on the tax liabilities that Defendants reported on their sworn tax returns, Plaintiff asserts that Defendants cannot dispute them. (Pl.'s Resp. and Cross-Mot. Summ. J., Ex. 2-6.)

The Court agrees and finds that Defendants are indebted to the United States for the assessed unpaid federal income taxes and statutory additions for the reasons discussed below.

Once having offered into evidence a certified copy of the Commissioner's assessment, the Government has established a prima facie case of liability based on the presumption of correctness afforded the Commissioner's determination. See Psaty v. U.S., 442 F.2d 1154, 1159 (3d Cir. 1971). The effect of this presumption is to effectively shift the burden to the taxpayer to present evidence that the assessments are incorrect. See U.S. v. Byock, 130 F. App'x at 595. At this point it becomes incumbent upon Defendants to offer evidence that the IRS's assessments are incorrect, in order to avoid summary judgment. Defendants have not offered sufficient evidence refuting the accuracy of the tax assessments. In fact, these assessments were based on the tax liabilities that Defendants reported in their sworn tax liabilities.[3] (Meehan Dep. at 33-36; Decl. of Stumpo ¶ 9, 20, 30, 36, 44.) Thus, the Court finds that Defendants have not met their burden in refuting the accuracy and enforceability of the IRS's assessments.

---

[3] Even in construing Defendants' submissions liberally as a pro se party, the Court finds that Defendants have not met their burden in refuting the accuracy of the IRS' certificates of assessment.

Furthermore, Plaintiff seeks to collect penalties that accrued due to Defendants' failure to pay their taxes by the due date.  Plaintiff contends that under the Internal Revenue Code, a penalty accrues for a taxpayer's failure to pay tax on time, unless the failure is "due to reasonable cause and not due to willful neglect." 26 U.S.C. § 6551.  Plaintiff, citing East Wind Indus. v. United States, 196 F.3d 299, 508 (3d Cir. 1999), avers that reasonable cause is present when a taxpayer has exercised ordinary business care and prudence in setting aside sufficient funds to satisfy his tax liability, but nevertheless could not pay the tax on time without suffering undue hardship.

Plaintiff asserts that Defendants bear the burden of meeting this standard and that Defendants cannot do so as they did not exercise ordinary business care and prudence in setting aside sufficient funds to satisfy its tax liability.  Plaintiff contends that Defendants could have taken a variety of measures toward reducing living costs and increasing household income but chose not to do so.  The Court agrees and for the reasons discussed below, grants summary judgment in favor of Plaintiff.

Pursuant to 26 U.S.C. § 6651, a penalty addition will be made to the amount assessed for a taxpayer's failure to pay tax on time, unless the taxpayer demonstrates that the failure to timely file was due to reasonable cause and not willful neglect. U.S. v. Boyle, 469 U.S. 241, 245 (1985). The burden, therefore, rests upon Defendants to establish both aspects of the requirement: reasonable cause and a lack of willful negligence.  Unless this burden is met, imposition of the penalties specified in 26 U.S.C. § 6651 is mandatory. In re Carlson, 126 F.3d 915, 921 (7th Cir. 1997).

"Reasonable cause" is not defined in the Internal Revenue Code. The phrase is, however, addressed in the Treasury Regulations:

> [F]ailure to pay will be considered to be due to reasonable cause to the extent that        the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship . . . if he paid on the due date.

In re Carlson, 126 F.3d at 921 (citing 26 C.F.R. § 301.6651-1(c)(1)).  In considering whether the taxpayer employed ordinary business care, the court should take into consideration all facts and circumstances of the taxpayer's situation. 26 C.F.R. § 301.6551-1(c)(1); East Wind Indus. v. U.S., 196 F.3d at 500.  For example, the United States Court of Appeals for the Second Circuit indicated that reasonable cause may arise from "unavoidable postal delays, death or serious illness of the taxpayer or a member of his immediate family, or reliance on the mistaken legal opinion of a competent tax advisor, lawyer, or accountant that it was not necessary to file a return." Marrin v. Comm'r, 147 F.3d 147, 152 (2d Cir. 1998) (citing McMahan v. Comm'r, 114 F.3d 366, 369 (2d Cir. 1997)).  The examples provided by the Second Circuit reflect situations marked by the influence of external circumstances, beyond the control of the taxpayer.

In determining whether reasonable cause existed, the court should evaluate whether undue hardship would result if the taxes were paid on time.  The Treasury Regulation defines undue hardship as more than a mere inconvenience, rather it must be substantial financial hardship, "for example, loss due to the sale of property at a sacrifice price." 26 C.F.R. § 301.6651-1(c)(1).

16

In assessing a taxpayer's business care and subsequent undue hardship, the court in <u>Carlson</u> found that the costs of medical care for the taxpayer's son, together with the mental distress caused by illness, was not adequately documented by the taxpayer and did not constitute undue hardship justifying the taxpayer's failure to pay income taxes.  Mr. Carlson thus did not demonstrate "reasonable cause" for his inability to pay his taxes on time. <u>In re</u> Carlson, 126 F.3d at 922.  In support of its decision, the court noted that the taxpayer, despite his son's illness and medical bills, did evidence the ability to exercise ordinary care and prudence with regard to other matters, including the payment of bills apart from his taxes.  Furthermore, the taxpayer chose to not sell certain property with substantial value, the sale proceeds from which would have substantially reduced or eliminated his tax burden. <u>Id.</u> at 923.

The court in <u>Carlson</u> explained that the type of illness that might create reasonable cause, justifying the excusing of tax penalties, is one that, due to its severity or timing, makes it virtually impossible for the taxpayer to comply with his tax requirements.  This would include emergency hospitalization or other incapacitation occurring around the time taxes are due. <u>Id.</u> at 923.

Similarly, the Second Circuit, in <u>Fran Corp. v. U.S.</u>, 164 F.3d 814 (2d Cir. 1999), held that a defendant did not exercise ordinary business care and prudence as his "failure to pay [his] taxes in a timely fashion was the result of either carelessness, reckless indifference, [or] intentional failure." <u>Id.</u> at 819.  In finding that the defendant failed to exercise business care and prudence, the court in <u>Fran</u> relied upon the fact that the defendant did not provide evidence to show that it placed its obligations to the IRS before other creditors.  In so holding, the Court

noted three expenditures, which the defendant made before paying his taxes: (1) the payment of monthly rent to an individual who was indebted to the defendant; (2) auto leasing and repair expenses; and (3) entertainment expenses. Id.

Mr. and Mrs. Meehan here have failed to provide sufficient evidence to demonstrate that they: (1) exercised ordinary business care and prudence in providing for payment of their tax liability, and (2) were unable to pay the tax on time without suffering an undue hardship.[4]

Defendants have produced no evidence that they attempted to conserve assets to meet their tax obligations.[5]  In fact, it has become clear that Defendants prioritized the payment of other debts and the purchase of certain items above the payment of their taxes.

Mr. Meehan, as of July 15, 2010 suffered from nephropathy and chronic kidney disease. (Letter from Dr.'s Smith and Techev, Defs.' Ex. 17.)  Mr. Meehan, in letters to the IRS, averred that, after 2008, his illness precluded him from obtaining employment and thus providing income to his family. (Notes from IRS Agent Boylan, Defs.' Ex. 18.)  While Defendants note that Mr. Meehan's illness had a negative affect on household income and was a substantial cost, Defendants have not produced medical bills or evidence of loss of income resulting from his illness to the Court.

Although Mr. Meehan's injury eventually caused him to stop working, this did not

---

[4] Even in construing Defendants' submissions liberally as a pro se party, the Court finds that Defendants have not met their burden in demonstrating that their failure to pay was due to reasonable cause.

[5] Although Mr. Meehan produced evidence of his financial difficulties to the IRS in his offers-in-compromise, such evidence has not been submitted to the Court.

occur until 2008.  In the time before then, Mr. Meehan maintained employment.  Throughout this

time, Mr. Meehan collected a steady income. Despite his injury, Mr. Meehan, as did Mr. Carlson,

demonstrated his ability to use ordinary business care in maintaining employment.

Mr. Meehan further asserted in his deposition that he inherited $50,000 upon the

death of his mother in 2004.  Instead of putting this money toward his increasingly delayed tax

payments, Defendants purchased a used 2001 Chevrolet Blazer for $11,000. (CitiMortgage Loan

Application, Defs.' Ex. 33.)  This was not the only automobile in Defendants' possession.  Mr.

Meehan had also purchased a "Passat" and a "Limex" as necessities to his business and to "drive

to different places and make sales calls . . . " (Meehan Dep. at 109, Dec. 1, 2010.)  Additionally,

Mr. Meehan explained that he did not sell his house and move into a smaller one in order to save

money because he did not want to pay taxes on sale of the house and the lien.

As Plaintiff contends, Mrs. Meehan did not provide any income to the family

before 2000. Mr. Meehan, in his deposition, discussed his hesitation to ask his wife to seek

employment until 2000 because he is "an old-school guy" and hoped his wife would never have

to work. (Meehan Dep. at 108, Dec. 1, 2010.)

As did the tardy taxpayers in Carlson and Fran Corp, Defendants fail to meet their

burden of demonstrating to the Court ordinary business care and prudence.  Defendants,

admittedly in a difficult financial situation, continued to place their obligations and personal

beliefs above their duty to pay taxes to the IRS in a timely fashion. Furthermore, Defendants have

presented no evidence that Mr. Meehan's medical bills, their auto payments, or living expenses

caused catastrophic financial distress.  As such, Defendants have not demonstrated that their failure to pay taxes in a timely fashion was due to reasonable cause.

Neither have Defendants adequately shown the Court that their conduct, in failing to meet their tax obligations, did not amount to willful neglect.  Willful neglect is a "conscious, intentional failure or reckless indifference." U.S. v. Boyle, 469 U.S. 241, 245 (1985) (quoting 26 U.S.C. § 6651(a)(1)).  Alternatively, it is a conscious decision to defer the filing of a return, with knowledge of its delinquency, beyond a reasonable time and without reasonable cause. First County Nat. Bank & Trust Co., of Woodbury, N.J. v. U.S., 291 F. Supp. 837 (D. NJ 1994).

Defendants, through depositions and subsequent motions filed with the Court, have demonstrated their knowledge of delinquency and a conscious decision to defer filing. Defendants deliberately chose to prioritize certain costs and debts above their debt owed to the IRS. Defendants, before sending any money to the IRS, paid for several automobiles and medical bills.  Furthermore, Mrs. Meehan failed to seek employment and add to the household income until 2000.  As such, the Court finds that Defendants have not only failed to demonstrate reasonable cause, but have also exhibited a willful neglect in paying taxes in a timely fashion.

## IV.  CONCLUSION

For the foregoing reasons, the Court finds that Defendants have failed to introduce evidence sufficient to create any genuine issue of material fact with respect to whether Defendants must pay all taxes and penalties that the IRS has assessed against them.  Accordingly,

the Court will deny Defendants' Motion for Summary Judgment and grant Plaintiff's Motion for Summary Judgment.

An appropriate Order follows.

**BY THE COURT:**

**/s/ Petrese B. Tucker**

_____

**Hon. Petrese B. Tucker, U.S.D.J.**